**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Deborah Donohgue, and Aaron Rubenstein,<br><br>Plaintiffs,<br><br>v.<br><br>Jeremy Mindich, Matthew Sirovich, Scopia Capital GP LLC, Scopia Capital Management LP, Scopia Management, Inc., Scopia Long LLC, Scopia LB LLC, Scopia PX LLC, Scopia Partners LLC, Scopia Long QP LLC, Scopia Windmill Fund LP, Scopia International Master Fund LP, Scopia PX International Master Fund LP, Scopia LB International Master Fund LP, and Scopia Long International Master Fund LP,<br><br>Defendants,<br><br>and<br><br>Itron Inc.,<br>Nominal Defendant. | No. 16-cv-5485<br>(ECF Case)<br><br><br>**COMPLAINT FOR RECOVERY OF SHORT-SWING PROFITS UNDER 15 U.S.C. § 78p(b)**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Deborah Donoghue and Aaron Rubenstein, by their attorneys, as and for their Complaint herein, respectfully allege as follows on knowledge as to themselves and their own acts and on information and belief as to all other matters:

**NATURE OF ACTION**

1.      This is an action to recover "short-swing" profits under Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Act"), 15 U.S.C. § 78p(b).

2.      Section 16(b) is a strict liability statute. A plaintiff must prove only that the defendant was an insider of a public company who profited from the purchase and sale of the company's stock or derivative securities within a period of less than six months. Evidence of the

defendant's intent, misuse of information, or bad faith is irrelevant and not required. Section 16(b) is not punitive and insiders are simply required to disgorge profits realized in violation of the Act.

3.     Defendants are insiders of Nominal Defendant Itron, Inc. ("Itron," or the "Company") who profited from purchases and sales of Itron stock that occurred within a period of less than six months. As a result, Defendants must return the profits they realized from these transactions to Itron.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to Section 27 of the Act, 15 U.S.C. § 78aa.

5.     Venue is proper in this Court pursuant to Section 27 of the Act, 15 U.S.C. § 78aa. Defendants maintain principal offices, transact business, or are otherwise found within this District.

## THE PARTIES

6.     Plaintiff Deborah Donoghue is a New York resident. Plaintiff Aaron Rubenstein is a Rhode Island resident. Both are shareholders of Itron.

7.     Nominal Defendant Itron is a Washington corporation in the business of energy and natural resource management, with principal offices at 2111 North Molter Road, Liberty Lake, Washington, 99019. This action is brought in the right and for the benefit of Itron, which is named as a Nominal Defendant solely in order to have all necessary parties before the Court.

8.     Each of Defendants Jeremy Mindich and Matthew Sirovich is a Managing Member of Defendant Scopia Capital GP LLC ("Scopia Capital"), a Delaware limited liability company, and a Managing Director of Defendant Scopia Management, Inc. ("Scopia Inc."), a

New York corporation. Scopia Inc. is the general partner of Defendant Scopia Capital Management LP ("Scopia Management"), a Delaware limited partnership. All of the foregoing Defendants are hereinafter collectively referred to as the "Managing Defendants."

9.      The 10 remaining Defendants are funds or investment vehicles (collectively, the "Scopia Funds"), which are structured as either Bermuda limited partnerships (LP's), or Delaware limited liability companies (LLC's). All Defendants maintain principal offices or are otherwise found within this District at 152 West 57th Street, 33rd Floor, New York, New York 10019.

10.      Scopia Management is the investment manager for the 10 Scopia Funds. Scopia Management is also the investment manager for a so-called "managed account," which traded Itron stock alongside the Scopia Funds and participated in the group investment strategy undertaken by the Managing Defendants, as further described in this Complaint. The Scopia Funds, together with the "managed account," are collectively referred to in Defendants' filings with the Securities & Exchange Commission ("SEC"), and are likewise collectively referred to in this Complaint, as the "Investment Vehicles."

11.      At all relevant times, all of the Managing Defendants and the Investment Vehicles were members of a beneficial ownership "group" under Section 13(d) of the Act, 15 U.S.C. § 78m(d) and applicable SEC Rules and Regulations and/or  "directors by deputization," and were thus "insiders" subject to continued reporting and disgorgement obligations under Section 16, as further alleged in Paragraphs 35-41, below.

12.      The Investment Vehicles are under the common control of the Managing Defendants, and the Managing Defendants are statutorily and contractually required to ensure

that the Investment Vehicles comply with Section 16(b) by disgorging the profits realized from the short swing transactions executed in (or allocated to) each Investment Vehicle.

## STATUTORY REQUISITES

13.     The violations of Section 16(b) described herein involve non-exempt securities in non-exempt transactions engaged in by non-exempt individuals and/or non-exempt entities within the meaning of the Act.

14.     At all relevant times, the common stock of Itron was registered pursuant to Section 12(g) of the Act, 15 U.S.C. § 78(g), and was listed for trading on the NASDAQ stock market located within the Southern District of New York.

15.     Plaintiffs each made demand for prosecution on Itron by letters dated April 4, 2016. More than 60 days have passed since these demands were made, during which time the Company has failed and refused to recover short swing profits from Defendants in excess of $79,000, as further alleged in Paragraphs 55-62, below. Further delay in filing suit would be a futile gesture.

16.     This action is brought within two years of the occurrence of the Section 16(b) violations described herein or within two years of the time when reports required by 15 U.S.C. § 78p(a) setting forth the substance of the transactions here complained of were first filed with the SEC.

## FACTUAL ALLEGATIONS

I.     **The Scopia-Coppersmith Beneficial Ownership Group**

A.     **The Joint Filing Agreement**

17.     On August 5, 2015, Defendants Sirovich, Mindich, and Scopia Management entered into a Joint Filing Agreement with Coppersmith Capital Management, LLC, its

managing member Jerome J. Lande, and its member Craig Rosenblum. The parties to the Joint Filing Agreement expressly agreed to form a "group" within the meaning of Section 13(d) of the Act, for the purpose of "(i) engaging in discussions with the Company regarding plans or proposals [that could effect a change of control] under Item 4 of Schedule 13D in accordance with the [Act]; (ii) taking all other action necessary to achieve the foregoing and (iii) taking any other actions the Group determines to undertake in connection with their respective investment in the Company."

18.     Given the formation of a Section 13(d) group, expressly acknowledged and inherently effected by virtue of their "agreement to act together" to influence Itron management, the Scopia Defendants and the Coppersmith parties agreed to jointly file the periodic Schedule 13D ownership reports, as required under Section 13(d) and applicable SEC Rules and Regulations when their aggregate beneficial ownership of Itron exceeded 5%. The group was required to file full Schedule 13D reports when this aggregate 5% threshold was reached, as its "control purpose," as stated in the Joint Filing Agreement, rendered the members ineligible to file short-form Schedule 13G reports that might otherwise have been available so long as their aggregate beneficial ownership of Itron remained below 20%.

19.     As members of a Section 13(d) beneficial ownership group, the parties would become Section 16 "insiders" subject to statutory reporting and short swing profit disgorgement obligations when their aggregate beneficial ownership of Itron exceeded 10%. The Joint Filing Agreement anticipated the potential consequences of crossing this ownership threshold by providing that no party would increase its beneficial ownership of Itron securities, if the increase would result in the group's aggregate beneficial ownership of more than 9.9% of the Company's common stock, without obtaining the prior consent of the other parties and group members.

20.     On September 21, 2015, all of the remaining Defendants, with the sole exception of Defendant Scopia Long QP LLC, and two additional Coppersmith affiliates (Coppersmith Value Partners II, LP; and Coppersmith Capital Partners, LLC), signed a Joinder Agreement pursuant to which they became parties to the Joint Filing Agreement and members of the Section 13(d) beneficial ownership group formed by and between the Scopia and Coppersmith entities.

21.     The Joinder Agreement referenced in the Paragraph above, along with the original August 5, 2015 Joint Filing Agreement, were first disclosed in and appended as exhibits to the initial Schedule 13D ownership report jointly filed by the Scopia and Coppersmith group members on September 21, 2015, the date of the Joinder Agreement. This Schedule 13D reported that the Coppersmith affiliates were beneficial owners of approximately 2.4% of Itron common stock, and the Scopia Defendants were beneficial owners of approximately 3.7% of Itron common stock; thus, that the aggregate beneficial ownership of the group members and joint filers amounted to approximately 6.2% of the outstanding shares of Itron common stock.

22.     On September 30, 2015, the Coppersmith and Scopia members of the 13(d) group jointly filed an amended Schedule 13D/A report, which disclosed that the Scopia Defendants had increased their beneficial ownership to 5% of Itron common stock, and there was no change to the Coppersmith affiliates' previously reported 2.4% beneficial ownership; thus, the aggregate beneficial ownership of the group members amounted to approximately 7.4% of the outstanding shares of Itron common stock.

23.     On November 4, 2015, the Coppersmith and Scopia group members jointly filed an amended Schedule 13D/A report, which disclosed and appended a Joinder Agreement of that same date, under which Defendant Scopia Long QP LLC became a party to the Joint Filing Agreement and joined the 13(d) group formed by and among all of the other Defendants as

parties. Thus, as of November 4, 2015, all Defendants were parties to the Joint Filing Agreement, in which they expressly acknowledged that they had formed a Section 13(d) "group" with the Coppersmith affiliates in order to pursue a jointly stated control purpose and otherwise act together to enhance their collective investment in Itron.

24.     Defendants' November 4, 2015 Schedule 13D/A disclosed that the Scopia Defendants had further increased their beneficial ownership to 7.5% of the Company's outstanding common stock, and the Coppersmith affiliates continued to maintain their previously reported 2.4% beneficial ownership. The increase in the Scopia Defendants' beneficial ownership, as reported in the November 4, 2015 Schedule 13D/A, thus brought the aggregate beneficial ownership of the group members up to the 9.9% limitation provided under the Joint Filing Agreement, as described in Paragraph 19, above.

### B.     The Cooperation Agreement

25.     On December 11, 2015, Defendants and the Coppersmith affiliates jointly filed an amended Schedule 13D/A, which did not report any change in beneficial ownership of Itron stock, but disclosed that, on December 9, 2015, Itron had entered into a Cooperation Agreement with a shareholder "Group." The "Members of the Group" were identified on Annex A to the Cooperation Agreement, which was appended as an exhibit to Defendants' Schedule 13D/A, as consisting of all of the same parties to the Joint Filing Agreement—i.e., all of the Defendants, and the Coppersmith affiliates.

26.     Defendants' December 11, 2015 13D/A further reported that the Joint Filing Agreement between Defendants and the Coppersmith affiliates was terminated on December 10, 2015—the day after the same parties entered into the Cooperation Agreement. Simultaneously, Defendants (to the exclusion of the Coppersmith affiliates) entered into a new Joint Filing

Agreement, which affirmed that Defendants would continue to jointly file Schedule 13D reports disclosing *their* ownership (but not including shares held by the Coppersmith affiliates).

27.     For purposes relevant to group formation and beneficial ownership under Section 13(d) and Section 16, the terminated Joint Filing Agreement, under which the Scopia-Coppersmith group was originally established, was effectively superseded by the Cooperation Agreement identifying the very same parties as "Group Members." The Cooperation Agreement revised the terms, *but maintained the existence of*, the agreement between and among the same Scopia-Coppersmith Group Members "to act together for the purpose of acquiring, holding, voting, or disposing of equity securities" of Itron, and thereby affirmed (or re-established) the formation of their Section 13(d) group. Defendants and the Coppersmith affiliates continue to be "Group Members" under Section 13(d), as they are named in the Cooperation Agreement—which remains in effect at the time of this Complaint.

28.     The Cooperation Agreement provided for the appointment of Coppersmith principal and Group Member Jerome Lande to the Itron Board, "effective immediately," and for "Peter Mainz, a candidate identified by Coppersmith Capital," to be appointed to the Board in January 2016 as an "Additional Independent Director." The Cooperation Agreement further obligated the Company to create a shareholder-focused "Value Enhancement Committee" comprised of the new Group appointees and independent members of the Itron Board.

29.     In exchange for these concessions from the Company, the Cooperation Agreement imposed certain voting and standstill restrictions on the Group. In particular, the Group Members committed to vote their shares as recommended by the Board, and agreed to maintain aggregate beneficial ownership amounting to between 5% and 12.5% of Itron. The

Group Members also agreed not to form a group with any *third* party (i.e., a party other than a Group Member or affiliate).

30.     The Cooperation Agreement, and in particular, the voting and standstill provisions described above, constituted an express agreement by the "Members of the Group" to act together for the purposes of voting, acquiring, holding, or disposing of Itron securities, and inherently affirmed the existence of the beneficial ownership group formed by the parties and Group Members under Section 13(d). At a minimum, the Cooperation Agreement required the Group Members to "act together" to aggregate their Itron holdings in maintaining the agreed-upon 5%-12.5% collective beneficial ownership range.

31.     Despite their entry into the Cooperation Agreement expressly identifying the Defendants and Coppersmith affiliates as "Group Members," Defendants asserted—incorrectly, in the same December 11 Schedule 13D/A in which they disclosed the Cooperation Agreement—that they were no longer members of a group that included the Coppersmith affiliates as a result of the termination of the prior Scoipa-Coppersmith Joint Filing Agreement. Consistent with Defendants' disclaimer of their continued membership in a group with the Coppersmith affiliates (but inconsistent with the law), Defendants stated that they would no longer aggregate their Itron holdings with the Coppersmith affiliates' in determining whether they exceeded the beneficial ownership thresholds provided under Sections 13 and 16 of the Act.

32.     Defendants' disclaimer of their continued group membership with the Coppersmith affiliates is an ineffective attempt to dictate the legal effects of their conduct (e.g., in terminating their prior Joint Filing Agreement); and, at best, reflects Defendants' (invalid) *attempt* and (unfulfilled) *intention* to terminate the Scopia-Coppersmith group. These statements are not controlling, cannot be credited over contrary facts reflected in public filings and alleged

in this Complaint. Moreover, Defendants' intent to violate Section 16(b)—whether by virtue of their membership in a Section 13(d) group or otherwise—is not a required element of Plaintiffs' claim, or of liability under the statute.

33.     Defendants' disclaimer of their continued membership in a Section 13(d) beneficial ownership group with the Coppersmith affiliates is specifically and expressly belied by their entry into the Cooperation Agreement, which superseded their terminated Joint Filing Agreement, and *revised but re-established* Defendants' commitment to act together with the Coppersmith affiliates to vote, enhance, and maintain their Itron investment. The Defendants and Coppersmith affiliates constituting the "Members of the Group" under the Cooperation Agreement likewise remained members of a group under Section 13(d). As such, regardless of their statements of belief or intent to the contrary, Defendants were obligated to continue aggregating their Itron holdings with the Coppersmith affiliates' in complying with the provisions of the Cooperation Agreement, as well as with the securities laws. In particular, Defendants were required to ascribe the aggregate holdings of all Group Members to each of them in determining whether they met the ownership thresholds subjecting them to Sections 13 and 16 of the Act.

34.     Based on their erroneous and ineffective disclaimers of group membership, Defendants and the Coppersmith affiliates failed to accurately calculate their beneficial ownership interests in Itron following the execution of the Cooperation Agreement. Because they improperly excluded Itron shares held by Defendants, the Coppersmith affiliates mistakenly asserted that their beneficial ownership no longer exceeded the 5% threshold subjecting them to Section 13(d) (the Coppersmith affiliates, however, unlike Defendants, acknowledged Section 16 disclosure obligations triggered by the appointment of directors to the Itron Board under the

Cooperation Agreement). Similarly, Defendants improperly excluded Itron shares held by the Coppersmith affiliates and incorrectly calculated or reported their beneficial ownership as below the 10% threshold subjecting them to Section 16 at the time of the violations alleged herein.

## II.   Defendants' Insider Status

### A.   The Group's (and Each Member's) 10% Beneficial Ownership

35.     Defendants became subject to Section 16 when the aggregate beneficial ownership of all of the Group Members—ascribed to each Group Member as required under Sections 13 and 16 of the Act, and under the Cooperation Agreement—exceeded 10% of Itron. Defendants Schedule 13D/A filed on December 17, 2015, reflects the crossing of this aggregate 10% beneficial ownership threshold. On that Schedule 13D/A, Defendants reported beneficial ownership of 8.6% of Itron common stock, *not* including or accounting for the 2.4% beneficial ownership interest continued to be held by the Coppersmith affiliates. Taken together, the aggregate beneficial ownership of Defendants and the Coppersmith "Members of the Group" thus amounted to 11% as of December 17, 2015. Defendants were accordingly subject to Section 16 reporting and short swing profit disgorgement obligations by that date, *at the latest.*

36.     Defendants' SEC filings reflect their incorrect position that they did not become subject to Section 16 until February 3, 2016—when their own beneficial ownership, exclusive of the Coppersmith affiliates', exceeded 10% of Itron. As described in Paragraph 34, above, Defendants rely on an improperly reduced calculation of their beneficial ownership by failing to ascribe to each of them the aggregate Itron holdings of all Group Members, as required under the Cooperation Agreement and under Section 13(d). As stated above, Defendants' erroneous self-assessment of their insider status and/or subjective intent to violate Section 16(b) are irrelevant to the imposition of strict liability under the statute, and have no bearing on the merits of this action.

B.  **The Group's "Deputization" of Directors**

37.     Defendants were also subject to Section 16 of the Act as "directors by deputization" as a result of and at the time of their entry into the Cooperation Agreement on December 9, 2015, due to the "immediate" appointment of Coppersmith principal and Group Member Jerome Lande to the Itron Board as provided by the Cooperation Agreement. The appointment of a director to represent their interests on the Itron Board provides a separate and independent basis for subjecting Defendants to Section 16—potentially before, and without regard to whether, the aggregate beneficial ownership of the Group Members exceeded the 10% threshold (which thereby provided an *additional* basis for Defendants' insider status).

38.     As described in Paragraph 25-34, above, the Cooperation Agreement provided for the Company's appointment of two directors to the Itron Board, in exchange for voting and standstill commitments from the Group. While both of the appointed directors were Coppersmith affiliates, Defendants would not have reasonably agreed to be bound to the voting and standstill restrictions imposed on them as "Members of the Group" in exchange for their appointment— unless Defendants believed that one or both of the appointees would represent Defendants' interests, in addition to (or together with) the interests of Coppersmith, on the Itron Board. As the Cooperation Agreement thus appears to contemplate and provide for Defendants' interests to be represented by appointees to the Board, Defendants became "directors by deputization" and insiders under Section 16. Defendants accordingly became subject to Section 16 as a result of Lande's Board appointment "immediately" upon execution of the Cooperation Agreement, on or about December 9, 2015.

12

C.    **Defendants' Continuing Section 16 Obligations**

39.    Even ignoring the effect of the Cooperation Agreement, and giving undue credence to Defendants' assertion that their membership in a group with the Coppersmith affiliates concluded upon termination of their initial Joint Filing Agreement, Defendants nonetheless were subject to a continuing obligation to aggregate their Itron holdings with the Coppersmith affiliates' in computing their beneficial ownership and complying with Section 16.

40.    As Defendants initiated their Itron investment, and framed and pursued their control intentions collectively with the Coppersmith affiliates—including by leveraging their aggregate beneficial ownership to influence Itron's management (as stated in their initial Joint Filing Agreement)—Defendants could not validly elect to "terminate" their group at will, and thereby opt out, at any time perceived to be most advantageous, of the proscription against insider short swing trading imposed under Section 16(b). Having pursued and benefitted from a group investment strategy in Itron, Defendants were not free to declare that strategy to be suddenly abandoned in order to engage in strictly prohibited trading practices.

41.    Thus, even if the Scopia-Coppersmith group were terminated (and it was not), Defendants remained subject to Section 16 and were required to disgorge profits realized from their short swing transactions, once the aggregate beneficial ownership of the members of the (supposedly) terminated group crossed the 10% threshold.

III.    **Short Swing Trading by the Investment Vehicles**

42.    In Schedule 13D/A reports filed on December 17, 2015, and on January 27 and February 19, 2016, Defendants disclosed a series of purchases and sales of Itron common stock executed by (or allocated to) the Investment Vehicles within the 60 days prior to each 13(d)

filing. The lists of transactions by the Investment Vehicles, which appeared as Schedule A in response to Item 5 of Defendants' Schedule 13D/A reports, are replicated and sorted by Investment Vehicle and appended as Exhibit A to this Complaint.

43.     On Forms 4 filed on March 16 and April 4, 2016, the Defendants disclosed the following additional purchases and sales of Itron common stock by "several of the Investment Vehicles" (defined to include the so-called "managed account," as discussed in Paragraph 10, above.) Defendants reported the following transactions without specifying which Investment Vehicle engaged in which transactions or the number of shares allocated to each.

| Date | Transaction | No. of shares | Price/share |
|------|-------------|---------------|-------------|
| 3/14/2016 | Purchase of Common Stock | 22,914 | $43.034 |
| 3/15/2016 | Purchase of Common Stock | 24,587 | $43.0542 |
| 3/16/2016 | Purchase of Common Stock | 33,74 | $40.3665 |
| 3/31/2016 | Sale of Common Stock | 12,618 | $41.761 |
| 3/31/2016 | Purchase of Common Stock | 12,709 | $40.3665 |
| 4/1/2016 | Purchase of Common Stock | 50,0001 | $41.8124 |
| 4/1/2016 | Sale of Common Stock | 49,643 | 41.7753 |

44.     On the Forms 4 referenced in the above Paragraph, Defendants disclosed the following additional purchases and sales executed by Scopia Management through the "managed account":

| Date | Transaction | No. of shares | Price/share |
|------|-------------|---------------|-------------|
| 3/14/2016 | Purchase of Common Stock | 385 | $43.034 |
| 3/15/2016 | Purchase of Common Stock | 413 | $43.0542 |
| 3/16/2016 | Purchase of Common Stock | 561 | $40.3665 |
| 3/31/2016 | Sale of Common Stock | 91 | $41.761 |
| 4/1/2016 | Sale of Common Stock | 357 | $41.7753 |

IV.     **Defendants' Section 16(b) Liability**

A.      **The Investment Vehicles**

45.     All of the Investment Vehicles were members of a 13(d) group beneficially owning, in the aggregate, more than 10% of Itron common stock, during the period in which the short swing trading identified in Paragraphs 42-44 occurred.

46.     10 of the Investment Vehicles are the Scopia Funds named as Defendants to this action. As alleged in Paragraphs 17-34, above, these Defendants were expressly identified both as parties to the original Scopia-Coppersmith Joint Filing Agreement (by virtue of the referenced Joinder Agreements), and as "Members of the Group" subject to the Cooperation Agreement.

47.     The remaining Investment Vehicle—the so-called "managed account"—was also bound by the Cooperation Agreement (e.g., as an "Affiliate" or "Associate" under common control with the Scopia Group Members), and subjected to its terms to the same extent and otherwise treated as an expressly identified "Group Member" or party.

48.     Moreover, the "managed account" engaged in a series of Itron transactions over the course of several months, alongside an analogous series of transactions executed by (or allocated to) the Scopia Fund Defendants on more or less the same dates, as reflected in the trades disclosed by Defendants, replicated at Exhibit A and described in Paragraphs 42-44, above. The evidently coordinated pattern of trading by the "managed account" with trading by the Scopia Funds illustrates that the Managing Defendants included the "managed account" in the group trading and investment strategy pursued and executed on behalf of all of the other Investment Vehicles. Defendants' disclosures reflect that they considered, traded, and protected the Itron stock held in (or allocated to) the "managed account" along with, in the same manner

and to the same extent as Itron stock held by (or allocated to) any other Group Member under their control.

49.     As members of a 10% beneficial ownership group, all of the Investment Vehicles (including the "managed account") were "insiders" individually subject to Section 16. Each Investment Vehicle is separately liable under Section 16(b) for 100% of any short swing profits realized from purchases and sales of Itron stock executed in (or allocated to) that Investment Vehicle.

50.     Short swing profits recoverable by the Company from each of the Investment Vehicles are calculated using the "lowest in, highest out" method prescribed under Section 16(b), by matching each Investment Vehicles' purchases of Itron stock against higher-priced sales of Itron stock by the same Investment Vehicle, within a six-month period.

51.     Under Section 16 and under the Cooperation Agreement, Defendants are responsible for ensuring compliance with the statute by the Investment Vehicles under their control, and must accordingly disgorge, on behalf of all of the Investment Vehicles, the sum total of the short swing profits calculated for (and allocated to) each Investment Vehicle. Each such Investment Vehicle has an independent obligation to disgorge its individual short-swing profits without duplicating the Managing Defendants' required disgorgement of their pecuniary interest in any of the Investment Vehicles' transactions.

52.     Plaintiffs cannot compute the profits realized by each Investment Vehicle under Section 16(b), as described above, with certainty at this time, due to the lack of particular information regarding some of the transactions executed by the Investment Vehicles, as reported in Defendants' Form 4 filings referenced in Paragraphs 43-44, above. Based solely on the limited information available from Defendants' SEC filings, Plaintiffs estimate that the average amount

of short swing profits realized by each Investment Vehicle is approximately $50,000. Total short swing profits realized by all Investment Vehicles—i.e., the total disgorgement required by Defendants and recoverable by the Company under Section 16(b)—is estimated to amount to be upwards of $500,000.

### B.    The Managing Defendants

53.    In addition to Defendants' liability for short swing profits realized by each of the Investment Vehicles, the Managing Defendants may also be held separately liable, under Section 16(b) and as contemplated by the Cooperation Agreement, each to the extent of their respective "pecuniary interests" calculated pursuant to applicable SEC Rules in the short swing profits realized from purchases and sales of Itron stock by any (and across all) of the Investment Vehicles under their control. Each Managing Defendant has an independent obligation to disgorge its individual short-swing profits, without duplicating the Investment Vehicles' disgorgement of profits directly realized as a result of their own transactions.

54.    Multiple Defendants under common control may be liable under Section 16(b) for some or all of the alleged short swing transactions under the "group" theory described in Paragraphs 45-52, and the "pecuniary interest" theory described in the above Paragraph 53. Duplicative disgorgement for the same short swing trading violations is avoided by applying the amount of any partial disgorgement (e.g., by the Managing Defendants) to reduce the total outstanding profits owed and remaining to be disgorged by all Defendants.

### V.    Plaintiffs' Demands and This Action

55.    Plaintiff's April 4, 2016 demand letter initiating this claim noted that Defendants' Form 4 filings stated that they had agreed to disgorge total short swing profits of $31,684.95. Plaintiff's counsel informed the Company that the amount of the purportedly agreed-upon

disgorgement did not appear to sufficiently represent Defendants' Section 16(b) liability, and specifically asked the Company to consider and calculate the short swing profits realized by and recoverable from each individual Investment Vehicle as a 10% beneficial ownership group member and separate Section 16(b) insider. On April 7, 2016, Plaintiff received a response from Itron's counsel at Perkins Coie LLP, stating that the Company was in the process of reviewing the Section 16(b) claim.

56.     On June 3, 2016 (at the very end of the statutory 60-day waiting period for filing suit), Plaintiffs were informed by new counsel for Itron at Skadden, Arps, Slate, Meagher & Flom LLP that Defendants had agreed to disgorge an additional amount of approximately $15,000. Plaintiffs' counsel maintained that the total amount of the agreed-upon disgorgement was inadequate.

57.     In subsequent conversations with counsel for Defendants at Akin Gump Strauss Hauer & Feld LLP, Plaintiffs were informed that Defendants' total disgorgement in fact approximated $79,000, with the inclusion of certain "attorneys' fees" that Defendants had agreed to pay to Itron's counsel. Plaintiffs advised Defendants that this amount still insufficiently reflected Defendants' Section 16(b) liability, and stated their intention to pursue this claim.

58.     Counsel for both Itron and Defendants independently confirmed that the amount of the agreed-upon disgorgement was based on a calculation of the Managing Defendants' limited "pecuniary interest" in the Itron stock purchased and sold by and across the Investment Vehicles in any period of time after February 3, 2016, when Defendants (belatedly) acknowledged becoming Section 16 insiders. As alleged in Paragraphs 35-36, above, however, Defendants were in fact subject to Section 16 as of December 17, 2015 due to their

18

unacknowledged membership in a group under the Cooperation Agreement, which included, and required Defendants' to aggregate their beneficial ownership with, the Coppersmith affiliates.

59.    Counsel for Itron and for Defendants continued to incorrectly assert that the Scopia-Coppersmith Group was terminated, notwithstanding the existence of the Cooperation Agreement. More curiously, counsel for Itron and for Defendants further refused to acknowledge that the Defendants or the Investment Vehicles are members of a Section 13(d) group *with each other*. This broader group disclaimer was never suggested in Defendants' filings, and is inconsistent with the applicable law and the disclosed facts. In particular, Defendants expressly re-adopted a *continued* Joint Filing Agreement between them at the time of the Cooperation Agreement, which apparently intended to reflect the removal of the Coppersmith affiliates from the surviving group purportedly constituted solely by the Defendants, as described in Paragraph 26, above. Additionally, the common control and ownership over all Defendants evidences and establishes that they are a group acting and investing together for purposes of Sections 13 and 16.

60.    As all of the Defendants, including the Investment Vehicles, are necessarily members *of their own group* (putting aside whether their group also includes the Coppersmith affiliates, as alleged and expressly indicated in the Cooperation Agreement), the Investment Vehicles would, in all events, be separately liable as individual group members and Section 16 insiders for 100% of the short swing profits realized by each of them after Defendants' aggregate beneficial ownership exceeded 10% of Itron.

61.    As discussed in Paragraph 36, above, Defendants asserted (incorrectly) that their aggregate beneficial ownership exceeded the 10% threshold, and subjected them to Section 16, on or about February 3, 2016. Under Defendants' own theory of liability, short swing purchases and sales by or within the same Investment Fund during any period subsequent to February 3,

2016 should be matched against each other, and 100% of the profits realized by each Investment Fund must be disgorged.

62.     As there is no reasonable basis for limiting the Company's recovery to the Managing Defendants' "pecuniary interest" in the shares traded by the Investment Vehicles, any supposed "settlement" between the Company and Defendants providing for such limited and insufficient disgorgement—or otherwise premised on a refusal to calculate profits based on a "group" theory—is legally inadequate, not entitled to deference, and does not bar or in any way diminish Plaintiffs' claim for the shortfall disgorgement, for which Defendants remain strictly liable under Section 16(b).

## COUNT I

### (Profits Recoverable Under Section 16(b) of the Securities Exchange Act)

63.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 62, above.

64.     Some or all of the Investment Funds had a direct pecuniary interest in the shares of common stock purchased or sold in the short swing transactions described and referenced in this Complaint.

65.     The transactions described in Paragraphs 42-44, above, resulted in short swing profits in an uncertain amount, estimated at over $500,000, which were realized by the Investment Vehicles and must be disgorged by Defendants under Section 16(b).

66.     Some or all of the Managing Defendants had an indirect pecuniary interest in all of the shares purchased and sold by any of the Investment Funds in the short swing transactions described and referenced in this Complaint.

20

67.   The Managing Defendants must disgorge their pecuniary interests in the short swing profits realized from the transactions by the Investment Vehicles, only to the extent this amount exceeds the total amount of short swing profits owed directly, and in the aggregate, by the Investment Vehicles as a result of purchases and sales by each of them within a six-month period.

## COUNT II

68.   Count II is a precaution against possible errors of detail attributable to inaccuracies in the public record or the discovery of additional trades during the course of this action.

69.   Defendants, acting during periods not barred by the statute of limitations measured from the date of the filing of this Complaint, purchased and sold or sold and purchased equity securities or equity security equivalents of the Company within periods of less than six months of each other while subject to Section 16(b), including but not limited to the transactions pleaded in Count I.

70.   By reason of such purchases and sales or sales and purchases of its equity securities or equity security equivalents within periods of less than six months of one another while insiders of the Company, Defendants realized profits, the exact amounts thereof being unknown to Plaintiffs, which profits inure to the benefit, and are recoverable by Plaintiffs on behalf, of the Company.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment:

(a)     Requiring Defendants to account for and pay to the Company the short swing profits recoverable from each of them under the Act, together with appropriate pre- and post-judgment interest and costs of this suit;

(b)     Awarding to Plaintiffs their costs and disbursements including reasonable attorney's, accountant's, and expert witness fees; and

(c)     Granting such other and further relief as the Court deems just and proper.

Dated: July 10, 2016

s/ Miriam Tauber

_____
Miriam Tauber (MT-1979)
MIRIAM TAUBER LAW PLLC
885 Park Avenue 2A
New York, NY 10075
Tel: (323) 790-4881
MiriamTauberLaw@gmail.com

David Lopez, Esq.
171 Edge of Woods Road, PO Box 323
Southampton, NY 11969
Tel: (631) 287-5520
DavidLopezEsq@aol.com

*Attorneys for Plaintiffs*